**EXHIBIT 1**

Exhibit 1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

LISA MARTIN,                          :

        Plaintiff,            :

         v.                   :        CASE NO.:  15-cv-5601

ROSS STORES, INC.,                    :

        Defendant.             :

### DECLARATION OF EMILIE CUOZZO

I, EMILIE CUOZZO, hereby declare that:

1.    I am making this declaration in support of Defendant ROSS STORES, INC.'s ("Ross") Motion to Compel Arbitration.  If called as a witness, I would and could competently testify to the following facts based on my personal knowledge.

2.    I am employed by Ross as its Sr. Manager, Human Resources.  I have over 6 years of experience in learning management systems.  I also have specific experience managing and/or implementing a number of systems offered by outside vendors.  In my current position with Ross, I am and have been responsible for administering Ross's on-line Learning Management System ("LMS"), also known as TRUE University ("True U").  As such, I am personally familiar with the functionality of LMS, as well as its user interface.

3.    Ross's LMS is a password-protected on-line environment allowing employees to "attend" various on-line courses and other learning activities.  It also allows management to "assign" courses to employees and, in a "view-only" mode, to monitor their progress and/or their completion of those learning activities based on the system's built-in record-keeping protocols.

4.    What we call our "True U" LMS is actually a hosted product that belongs to an external vendor, named SumTotal.  It's their proprietary system.  I have personally worked with that vendor's products, and I am familiar with the arrangement between Ross and SumTotal. Essentially, Ross leases the system and seat space from SumTotal, along with the right to load our

DECLARATION OF EMILIE CUOZZO

Exhibit 1

courses into SumTotal's proprietary on-line Learning Management System environment and then, utilizing the functionality and protocols built into SumTotal's system, to make those courses accessible online to our employees and to be able to monitor employee progress in doing so using the record-keeping functionality of SumTotal's product. Ross, however, has had no right or ability to change the core functionality of SumTotal's system, not the protocols for the user interface and not the ways in which the system records users' on line progress. We can change the title or text content of our on-line learning activities, and we also can add or delete specific learning activities from the menu of course offerings. But we can no more change the core functionality or protocols of that proprietary program than, for example, a user of Microsoft Word could change the core functionality of how that word-processing program works. For this reason, I can personally say with certainty that the core functionality both of how Ross's learning activities are presented to employees in SumTotal's system and of how that system records employee progress in completing those activities is identical today to how the system operated as of the June-July 2011 timeframe. The June-July 2011 timeframe is when, as I understand it, Ross first "assigned" to all existing store associates a Dispute Resolution Agreement ("DRA") learning activity within the True U LMS. Within the True U LMS (SumTotal), that DRA activity functions now and functioned as of June-July 2011 as follows:

5.  When employees first open the True U LMS, they encounter a "Log On" screen. Attached hereto as **Exhibit "A"** is a true and correct copy of a screen print of the "Log On" page. At this screen, an employee must enter both a Username (which is their Ross Associate Number) and a Password or else they cannot proceed. First-time users are prompted to enter the generic password "welcomel," which logs them onto the system and then prompts them to create a new, unique, permanent password for themselves, which they must enter twice before they can proceed further. Repeat users log on with their Username and the unique password they created the first time they logged on to the system. This password security protocol functions exactly like many password-protected sites in the Internet.

6.  Once an employee creates their own, unique password, nothing in the True U LMS

DECLARATION OF EMILIE CUOZZO

Exhibit 1

shares that password with anyone, not with managers, not even with a system administrator like myself. An employee's password cannot be manually retrieved from the system by anyone. Only the employee user will know his/her password. If an employee forgets his/her password, we have no way to retrieve it. The only thing we can do is manually "re-set" that employee's password to allow him/her to create a new password. Furthermore, the security protocols of the True U LMS do not permit anyone other than a user with the correct password to enter an employee's individual True U LMS account, though Managers (and an administrator like myself) have the ability to "view" and print select screens of an employee's True U LMS account.

7.      Once logged on, employees can go to their True U "To Do" section on their homepage to see a list of learning activities and courses assigned to them. Attached hereto as **Exhibit "B"** is a true and correct copy of a screen print of a "To Do" section on a home page within the LMS with a listing of assigned courses for a new retail associate. As you can see, the "Dispute Resolution Agreement" (DRA) is one of the listed activities. (I have checked the DRA course's date stamp within the system, which would automatically record the dates of any modifications made to the "content" of the DRA activity, and there have been no such modifications to that content since the date the DRA activity was first added to the "To Do" offerings in mid-2011.) From this "To Do" section, the employee can view a course description/Activity Summary of the DRA if they highlight the DRA entry and then click the "View Details" button near the bottom right corner of the page. If they do so, an Activity Summary will show on a pop-up window. Attached hereto as **Exhibit "C"** is a true and correct copy of a screen print of the pop-up of the DRA Activity Summary. It states:

> **"READ CAREFULLY THIS AGREEMENT EFFECTS [sic] YOUR RIGHTS Following for your review and signature is a copy of Ross's Dispute Resolution Agreement. You received a hard copy of this document with your 2011 Ross Store Associate Handbook. Please read the attached agreement carefully. By agreeing to its teems you and Ross are waiving; your right to have disputes related to your employment heard by a jury and are agreeing**

3

DECLARATION OF EMILIE CUOZZO

Exhibit 1

**to have any disputed (sic) decided by an arbitrator instead."**

8.      To actually launch the "Dispute Resolution Agreement" activity, employees click the "start" button corresponding to the DRA activity.  When they do, the course page and course pop-up window will appear.  The course page simply tells the employee not to close it because an activity launch is in progress.  The pop-up is the learning Activities Details screen which provides a description of the course content. A true and correct copy of a learning Activities Details page is attached as **Exhibit "D"**.  Employees then click the "next" button to launch the course. The course begins at a Language Selection screen (a true and correct screen print of which is attached hereto as **Exhibit "E"**), because the system can display the DRA text for the employee in either English or Spanish.  After selecting a language, the Dispute Resolution Agreement itself is then automatically displayed on the screen.  To see the whole Agreement, an employee must scroll down the page.  Attached hereto as **Exhibit "F"** is a true and correct copy of a screen print of the text of Dispute Resolution Agreement as it is displayed in English on the LMS system.

9.      Once employees finish reading the DRA text, clicking the "next" button at the bottom of the page will take them to the system's electronic signature page.  Attached hereto as **Exhibit "G"** is a true and correct copy of a screen print of the electronic signature page which reads:

> **"I have read the Dispute Resolution Agreement dated October 2010 and by Ross' printed name below and my electronic signature (i.e., clicking on the 'I agree' button) both Ross and I mutually agree to comply with and be bound to such. By mutually agreeing to arbitrate covered disputes, both Ross and I recognize that there disputes will not be resolved by a court or jury. I also understand that I may review this Agreement with an attorney of any choice and at my expense before signing this Agreement."**

Below that text appears the printed name:

> **"AGREED: ROSS STORES, INC."**

Below that printed name, the signature page then offers the employee two options: either to sign

EDDOCS 311000164.1

Exhibit 1

and agree to the DRA (by clicking "I agree") or to decline to enter into the DRA (by clicking "exit"). That portion of the screen reads:

**"By clicking on the `I agree' button you are providing Ross Stores, Inc. with the equivalent of your written signature for legal purposes. If you do not wish to sign the Dispute Resolution Agreement, click the 'Exit' below."**

The bottom of the signature screen includes the referenced "I agree" and "Exit" buttons. A "back" button is also provided at the bottom of the signature page, which, if clicked, will take employees back to the text of the DRA if they want to re-read it before deciding what to do. Finally, if an employee wants to wait a day or more before making a final decision, perhaps because they want to consult with someone about the DRA, the system is designed so that an employee who clicks "exit" may still re-launch the DRA activity later if they change their mind and decide to sign and agree to the DRA.

10.     The functionality and protocols built into True U (ie, into SumTotal's system) record and display an employee's electronic decision about whether to sign or not to sign (ie, to agree or to decline to agree) to the DRA, in a couple of different ways.

11.     If an employee clicks "Exit" – signifying they do not agree at that time to sign the DRA – the system records and displays that decision as follows:

(a)     The system first immediately and automatically takes that employee directly to his/her "Learning Activity Progress Detail" page, where, under the "Topic Status" heading for that activity, that page will display the word: "*Incomplete*." Attached as **Exhibit "H"** is a true and correct screen print of a sample Learning Activity Progress Detail page for an associate who clicked "exit" at the DRA signature page, and, as it shows, the word "incomplete" is displayed under the "Topic Status" heading for the DRA activity.

(b)     If an employee clicks "Exit" at the DRA electronic signature page, that decision is also recorded and reflected in that employee's "To Do" section, and in two ways. First, the DRA activity will *still* be listed in that section. If the employee had clicked "I agree," the DRA activity would no longer appear in the To Do section, at all. Second, under the "Status"

5

DECLARATION OF EMILIE CUOZZO

Exhibit 1

heading for that DRA activity, the To Do section will read: "In Progress." Attached as **Exhibit "I"** is a true and correct screen print of a sample "To Do" section for an associate who clicked "exit" at the DRA signature page, and as you can see, it states "In Progress" under the Status heading for the DRA activity.

12. Alternatively, if an employee clicks the "I agree" button on the DRA signature page -- signifying they agree to be bound by the DRA -- the system records and displays that decision in the following ways:

(a) On the Training Transcript page for an employee who clicks "I agree," the DRA activity will now be listed. If the employee clicks "exit," the system will not list the DRA activity on the employee's Training Transcript page. If the employee clicks "I agree," however, not only will the Training Transcript page list the DRA activity, it also will specify a "completion date" for the DRA activity, as well as specifying (under the heading "Attended Duration") the total elapsed time the employee spent on that activity (from launch of that activity to the time the employee electronically signed it).

(b) From the Training Transcript page of an employee who clicked "I agree" to the DRA activity, you also would be able to click and print a "diploma" for the DRA activity (which is a dated form entitled, "Certificate of Achievement." If the employee had clicked "exit" at the DRA signature screen, no such "Certificate of Achievement" diploma could be printed.

13. As noted above, as an LMS administrator, I am able to view and print certain screens from any store employee's True U LMS account.

14. I personally used this view/print-only mode to view certain screens for former Ross associate Lisa Martin and to print the following screens:

(a) Attached hereto as **Exhibit "J"** is a true and correct copy of a screen print of Lisa Martin's "Training Transcript" page. It lists the DRA activity. It specifies "completion date" of December 27, 2012 for that DRA activity. It also lists a total elapsed time of 2 minutes and 45 seconds for that activity under the "Attended Duration" heading. As noted above and per

DECLARATION OF EMILIE CUOZZO

Exhibit 1

the system's core functionality built-in protocols, that screen would not have displayed the stated content unless Lisa Martin had clicked "I agree" on the DRA signature page.)

(b)       Attached hereto as **Exhibit "K"** is a true and correct copy of a screen print of Lisa Martin's "Certificate of Achievement" diploma for Lisa Martin's "successful completion" of the "Dispute Resolution Agreement" activity on December 27, 2012, which I printed by clicking the diploma icon on Lisa Martin's  Training Transcript page.  As noted above, according to the system's core functionality and built-in protocols, this Certificate would not be available if Lisa Martin had not clicked "I agree" on the DRA signature page.

15.       Based on my personal knowledge of the core functionality, record-keeping protocols and operation of SumTotal's LMS, which Ross has named "True U", the content of the screen prints I made from Lisa Martin's account and listed above in Paragraph 14, subsections (a) and (b), unequivocally and with certainty indicate that Lisa Martin clicked "I agree" on the Dispute Resolution Agreement signature page, on December 27, 2012.

I declare under penalty of perjury in the laws of the United States of America, that the foregoing is true and correct based on my first hand knowledge.


Executed this  14  day of October 2015, in Dublin, California.

EMILIE CUOZZO

DECLARATION OF EMILIE CUOZZO

**EXHIBIT A**

# ROSS dds
DRESS FOR LESS  DISCOUNTS

## Log On

Please enter your username and password.
For forgotten password, please contact your store manager.

Username:

Password:

**Log On**

Copyright © 2004-2013 SumTotal® Systems, Inc. All rights reserved.

SumTotal Systems, the SumTotal Systems logo, ToolBook, the ToolBook logo, Aspen,
the Aspen logo, TotalLMS, TotalLCMS, TotalVCS, TotalInformation,
TotalCollaboration, TotalAccess, TotalVersioning, and TotalPerformance are
registered trademarks or trademarks of SumTotal Systems, Inc. and/or its affiliates.
All other company and product names are the property of their respective owners.

2012.12.1640.0

**EXHIBIT B**



EXHIBIT B

**EXHIBIT C**



**SumTotal -- Webpage Dialog**

# Activity Summary

**DISPUTE RESOLUTION AGREEMENT**

[ Print ]   [ OK ]

Expand All ⌄   Collapse All ⌃

**Description and Notes**
Below are the details about this activity including activity description, user notes and instructor notes.

Description:

## READ CAREFULLY THIS AGREEMENT AFFECTS YOUR RIGHTS

Following for your review and signature is a copy of Ross's Dispute Resolution Agreement. You received a hard copy of this document with your 2011 Ross Store Associate Handbook. Please read the attached agreement carefully. By agreeing to its terms you and Ross are waiving your right to have disputes related to your employment heard by a jury and are agreeing to have any disputed decided by an arbitrator instead.

**Additional Information**
Below are the additional details about this activity such as facility, location and so on.

EXHIBIT C

**EXHIBIT D**



https://rod.sumtotalsystems.com/?ViewMode=1&ViewSubMode=0&PackageId={13421474-6388-4583-BC67-86 - Windows Internet Explorer

# DISPUTE RESOLUTION AGREEMENT

**Learning Activity Details**

Description:

## READ CAREFULLY THIS AGREEMENT AFFECTS YOUR RIGHTS

Following for your review and signature is a copy of Ross's Dispute Resolution Agreement. You received a hard copy of this document with your 2011 Ross Store Associate Handbook. Please read the attached agreement carefully. By agreeing to its terms you and Ross are waiving your right to have disputes related to your employment heard by a jury and are agreeing to have any disputed decided by an arbitrator instead.

Next   Cancel

**EXHIBIT E**



EXHIBIT E

**EXHIBIT F**



## DISPUTE RESOLUTION AGREEMENT

This Agreement sets forth the procedures that you and Ross mutually agree must be used to resolve disputes arising out of or related to your employment with Ross or its termination. Disputes subject to this Agreement will be resolved by mediation or final and binding arbitration and not by a court or jury.

This Agreement covers disputes both between you and Ross or you and any other Ross Associate or any other agent or employee of Ross, regardless of who initiates the claim. Covered disputes include, but are not limited to, the use of trade secrets, unfair competition, compensation, termination, harassment, discrimination and claims based on the Civil Rights Act of 1964, the American with Disabilities Act, the Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act and similar state statutes and any related common law claims. This Agreement does not cover worker's compensation, state disability insurance and unemployment insurance claims or any other claims not subject to arbitration as a matter of controlling law.

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq. This Agreement does not prohibit you or Ross or anyone else from filing claims with agencies such as the National Labor Relations Board, Equal Employment Opportunity Commission and the U.S. Department of Labor to the extent applicable law permits such filings notwithstanding an agreement to arbitrate. In addition, this Agreement does not excuse Ross or you from legal obligations to exhaust applicable administrative remedies, if any, prior to bringing a claim.

Under this Agreement, covered disputes must be resolved using the following procedure:

- A party initiating arbitration must deliver or mail a written demand for arbitration to the other party within the applicable statute of limitations period. Arbitration demands to Ross must be made to: General Counsel's Office, 4440 Rosewood Drive, Pleasanton, CA 94588. Arbitration demands to you must be made to: your attorney of record, if applicable, or your address on file.

- As the next step, you and Ross will participate in mediation in an effort to resolve the dispute. A neutral mediator will be agreed to mutually by the parties. The mediation will be held in the geographic area where you last worked for Ross unless the parties agree to some other location. The mediator's fees will be paid by Ross. The parties may skip this step by mutual consent.

- If the dispute is not resolved by mediation, a neutral arbitrator shall be selected by mutual agreement of the parties. The arbitration will be held in the geographic area where you last worked for Ross unless the parties agree to some other location. To be eligible for selection, the arbitrator must have a J.D. (law degree). If the parties cannot mutually agree to an arbitrator, any party may request a court of competent jurisdiction to appoint one. Where applicable law requires, Ross shall pay all arbitration fees and costs incurred in connection with the arbitration, including the arbitrator's fee. Where applicable law does not require such, the fees and costs will be

**<BACK        NEXT>**



## DISPUTE RESOLUTION AGREEMENT

This Agreement covers disputes both between you and Ross or you and any other Ross Associate or any other agent or employee of Ross, regardless of who initiates the claim. Covered disputes include, but are not limited to, the use of trade secrets, unfair competition, compensation, termination, harassment, discrimination and claims based on the Civil Rights Act of 1964, the American with Disabilities Act, the Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act and similar state statutes and any related common law claims. This Agreement does not cover worker's compensation, state disability insurance and unemployment insurance claims or any other claims not subject to arbitration as a matter of controlling law.

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq. This Agreement does not prohibit you or Ross or anyone else from filing claims with agencies such as the National Labor Relations Board, Equal Employment Opportunity Commission and the U.S. Department of Labor to the extent applicable law permits such filings notwithstanding an agreement to arbitrate. In addition, this Agreement does not excuse Ross or you from legal obligations to exhaust applicable administrative remedies, if any, prior to bringing a claim.

Under this Agreement, covered disputes must be resolved using the following procedure:

- A party initiating arbitration must deliver or mail a written demand for arbitration to the other party within the applicable statute of limitations period. Arbitration demands to Ross must be made to: General Counsel's Office, 4440 Rosewood Drive, Pleasanton, CA 94588. Arbitration demands to you must be made to: your attorney of record, if applicable, or your address on file.

- As the next step, you and Ross will participate in mediation in an effort to resolve the dispute. A neutral mediator will be agreed to mutually by the parties. The mediation will be held in the geographic area where you last worked for Ross unless the parties agree to some other location. The mediator's fees will be paid by Ross. The parties may skip this step by mutual consent.

- If the dispute is not resolved by mediation, a neutral arbitrator shall be selected by mutual agreement of the parties. The arbitration will be held in the geographic area where you last worked for Ross unless the parties agree to some other location. To be eligible for selection, the arbitrator must have a J.D. (law degree). If the parties cannot mutually agree to an arbitrator, any party may request a court of competent jurisdiction to appoint one. Where applicable law requires, Ross shall pay all arbitration fees and costs incurred in connection with the arbitration, including the arbitrator's fee. Where applicable law does not require such, the fees and costs will be apportioned between you and Ross by decision of the arbitrator applying applicable law.

- In the arbitration, all parties will have the right to conduct discovery and bring motions as provided for by the Federal Rules of Civil Procedure. There will be, however, no right or authority for any dispute to be brought or arbitrated as a class or collective action.

**<BACK      NEXT>**

EXHIBIT F2



https://rod.sumtotalsystems.com/?PackageViewId=4FEA47BD-EE76-454B-83B1-5D0A088BEA2E&StudyMode=t - Windows Internet ...

**ROSS**

**DISPUTE RESOLUTION AGREEMENT**

**dd's DISCOUNTS**

- In the arbitration, all parties will have the right to conduct discovery and bring motions as provided for by the Federal Rules of Civil Procedure. There will be, however, no right or authority for any dispute to be brought or arbitrated as a class or collective action. The arbitrator's decision will be final and binding and will be issued in writing, stating the essential findings of facts and conclusions of law.

- The arbitrator may award only those remedies provided by applicable federal or state law based on the underlying claims as would be available to a party in a court of law for the claims presented to and decided by the arbitrator. Each party will be responsible for their own attorneys' fees except where such fees are awarded as part of the remedy as provided by applicable state or federal law. The arbitrator's award can be enforced as a final judgment in any court of competent jurisdiction.

- This sets forth our complete Dispute Resolution Agreement. Once signed, it supersedes any prior or other such agreements. If any portion of this Agreement is deemed invalid, all remaining portions shall continue to be enforceable. Ross Associates, acting alone or together, will not be disciplined or retaliated against for challenging the enforceability of part, or, all of this Agreement.

**AGREED: ROSS STORES, INC.**

**ROSS Policy & Resource Manual**
**Original Date: October 2010**

**<BACK     NEXT>**

Done                                    Internet | Protected Mode: On                        100%

EXHIBIT F3

**EXHIBIT G**



Employee has option to Click "I Agree" or "Exit

**EXHIBIT H**

LAPD if the employee clicks "Exit" instead of "I Agree"



**EXHIBIT I**



EXHIBIT I

**EXHIBIT J**

SumTotal - Training Transcript

ROSS DRESS FOR LESS dds DISCOUNTS

STEVEN DRANSFIELD - log off
LISA MARTIN - Change view

Assess ▽    Learn ▽

Learner    Manager    Report Manager    Administrator

Powered by **SumTotal**
🔍 Search 🛠 Help

Home > Learn - Learning Activity Reports - Training Transcript

# Training Transcript

Export to PDF

Select a year or date range to filter completed training records.

All

## LISA R MARTIN

| | |
|---|---|
| Username: | E-mail: |
| DS::485560 | |
| User number: | City: |
| 282437 | NILES |
| State/Province: | Manager: |
| IL | CHRISTOPHER BICE |
| Primary organization: | Primary job: |
| NILES | Manager, Store |

## Activities

| Activity | Estimated Credit Hours | Start Date | Completion Date ▽ | Expiration Date | Score | Attended Duration |
|---|---|---|---|---|---|---|
| Online Course: MODULE 3: IMPROVING BELOW-STANDARD PERFORMANCE | | 9/10/2013 | 9/10/2013 | | 90 | Days: 0, Hours: 0, Minutes: 31, Seconds: 5 |
| Online Course: MODULE 2: SETTING PERFORMANCE STANDARDS | | 9/10/2013 | 9/10/2013 | | 90 | Days: 0, Hours: 0, Minutes: 42, Seconds: 16 |
| Online Course: MEAL AND REST BREAK POLICY FOR MANAGER | | 9/10/2013 | 9/10/2013 | | 100 | Days: 0, Hours: 0, Minutes: 5, Seconds: 6 |

https://rod.sumtotalsystems.com/rossstores/app/management/LMS_LearnerReports.aspx?Us... 11/25/2013

Exhibit J1

# SumTotal - Training Transcript

| | Course | Date | Date | Score | Time |
|---|---|---|---|---|---|
| | Online Course: MODULE 1: ROLE OF THE LEADER | 8/14/2013 | 8/14/2013 | 80 | Days: 0, Hours: 0, Minutes: 37, Seconds: 3 |
| | Online Course: STORE PROTECTION SPECIALIST TRAINING | 3/15/2013 | 3/15/2013 | 88 | Days: 0, Hours: 0, Minutes: 31, Seconds: 59 |
| | Online Course: SOCIAL MEDIA POLICY | 1/6/2013 | 1/6/2013 | 0 | Days: 0, Hours: 0, Minutes: 15, Seconds: 39 |
| | Learning Plan: STORE MANAGEMENT SAFETY TRAINING | 1/6/2013 | 1/6/2013 | 90 | |
| | Online Course: NON HARASSMENT MGR3 TRAINING V2 | 1/1/2013 | 1/6/2013 | 100 | Days: 0, Hours: 2, Minutes: 9, Seconds: 46 |
| | Online Course: INTEGRITY SUITE TRAINING 02 | 12/28/2012 | 1/6/2013 | | Days: 0, Hours: 1, Minutes: 55, Seconds: 25 |
| | Learning Plan: STEP TRAINING | 12/26/2012 | 1/4/2013 | 80 | |
| | Learning Plan: FAST TRAINING | 12/26/2012 | 1/4/2013 | 100 | |
| | Learning Plan: START TRAINING | 12/27/2012 | 1/4/2013 | 90 | |
| | Online Course: STORE ASSOCIATE HANDBOOK ACKNOWLEDGEMENT | 12/28/2012 | 12/28/2012 | 0 | Days: 0, Hours: 0, Minutes: 0, Seconds: 37 |
| | Online Course: Effective Scheduling (Staffworks) Training | 12/27/2012 | 12/28/2012 | | Days: 0, Hours: 3, Minutes: 0, Seconds: 33 |
| | Online Course: NAO ASSESSMENT | 12/27/2012 | 12/27/2012 | 100 | Days: 0, Hours: 0, Minutes: 5, Seconds: 13 |
| | Online Course: DISPUTE RESOLUTION AGREEMENT | 12/27/2012 | 12/27/2012 | 0 | Days: 0, Hours: 0, Minutes: 2, Seconds: 45 |
| | Online Course: INTEGRITY SUITE TRAINING 01 | 12/27/2012 | 12/27/2012 | | Days: 0, Hours: 2, Minutes: 11, Seconds: 34 |
| | Online Course: COMPUTER USE POLICY | 12/27/2012 | 12/27/2012 | 0 | Days: 0, Hours: 0, Minutes: 5, Seconds: 2 |
| | Online Course: CONFIDENTIALITY AND CONFLICT | 12/27/2012 | 12/27/2012 | 0 | Days: 0, Hours: |

Exhibit J2

SumTotal - Training Transcript

Page 3 of 3

OF INTEREST

0, Minutes: 2,
Seconds: 51

Exhibit J3

**EXHIBIT K**



**Certificate of Achievement**

*Total University recognizes*

**LISA R MARTIN**

*for the successful completion of*

**DISPUTE RESOLUTION AGREEMENT**

**12/27/2012**

Signature: _____
11/25/2013

Grade: _____
Score: ___0___
Completion Status : ___Attended___

Exhibit K